UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

The Antioch Company, LLC, et al.,

Debtors.[1]

Chapter 11 Case No. 13-41898
(Jointly Administered)

---

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
CONFIRMATION OF THE AMENDED JOINT PLAN OF REORGANIZATION OF
THE ANTIOCH COMPANY, LLC AND ITS AFFILIATED DEBTORS AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

The Antioch Company, LLC and its affiliated debtors (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Plan Proponents") submit this Supplemental Memorandum in further support of the Amended Joint Plan of Reorganization of The Antioch Company, LLC and Its Affiliated Debtors and the Official Committee of Unsecured Creditors [Docket No. 286] (as may be amended, modified or supplemented from time to time, the "Plan").[2]

At the hearing on confirmation of the Plan, the Court asked the Plan Proponents to submit supplemental briefing to support the inclusion of section 6.7 in the Plan, which sets a deadline for recognizing Claim transfers, and states that "[n]o transfers Filed with the Bankruptcy Court after the Confirmation Date shall be recognized by the Liquidating Trustee." As set forth in more detail below, the Plan Proponents assert (i) that the Court has authority under section 1141

---

[1] Jointly administered estates of the following Debtors: The Antioch Company, LLC Case No. BKY 13-41898, Antioch International, LLC Case No. BKY 13-13-41899, Antioch International–Canada, LLC Case No. BKY 13-41900 Antioch International–New Zealand, LLC Case No. BKY 13-41901, Creative Memories Puerto Rico, LLC Case No. BKY 13-41902, Antioch Framers Supply, LLC Case No. BKY 13-41903, and zeBlooms, LLC Case No. BKY 13-41904.

[2] The capitalized terms used in this Supplemental Memorandum, unless otherwise defined, shall have the meanings ascribed to such terms in the Plan.

of the Bankruptcy Code (which makes clear that upon confirmation claims are satisfied and discharged under the Plan) and Bankruptcy Rule 3021 (which permits the Court to set a record date with respect to certain debt and equity securities) to confirm the Plan with the inclusion of section 6.7, (ii) that the purpose of section 6.7 is to benefit all creditors by maintaining certain tax and securities law attributes for the Liquidating Trust, and (iii) that Bankruptcy Rule 3001(e) does not prohibit the inclusion of section 6.7 in the Plan.

At the confirmation hearing the Court questioned whether Bankruptcy Rule 3001(e) prohibits the inclusion of section 6.7 in the Plan. Bankruptcy Rule 3001(e), which addresses procedures for transferring claims, does not apply after confirmation of a plan because claims are fully satisfied and discharged and, thus, do not exist post-confirmation.[3] Section 1141(d)(1)(A) of the Bankruptcy Code states that the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." Indeed, the purpose of a plan is to fully resolve and settle claims.[4] After plan confirmation, and unless a plan expressly provides

---

[3] Of course, in many instances, the validity of claims may need to be determined after plan confirmation, which is why objections to claims and resolution of those objections can occur after confirmation. But at issue after confirmation is simply whether a claim existed as of confirmation, and in what amount. To the extent a claim is allowed post-confirmation, it is treated as if it was allowed and satisfied under the plan as of confirmation. Here, the Plan and Liquidating Trust Agreement protect creditors whose claims are allowed after confirmation by mandating procedures for the establishment of a disputed claims reserve. Thus, the fact that there will be claims objections after confirmation does not change the conclusion that under section 1141 of the Bankruptcy Code all claims are deemed satisfied and discharged as of confirmation.

[4] As the Tenth Circuit has stated:

> Because it is defined by law to be a "pre-petition priority claim" under section 502(i) of the Bankruptcy Code, the post-petition assessment of an increased contribution rate *is deemed to have been included in, and settled by the debtor's Chapter 11 plan of reorganization.* 11 U.S.C. §§ 1129(a)(9)(C), 1141(d)(1)(A). Upon confirmation, the plan binds both the debtor and the [creditor] to the settlement of this "claim." 11 U.S.C. §§ 502(i), 1129(a)(9)(C), 1141(a). Under section 1141(d)(1)(A) of the Bankruptcy Code, any part of the "claim" which is not satisfied under the provisions of the plan is discharged as a debt when the Chapter 11 debtor's plan of reorganization is confirmed.

*Hollytex Carpet Mills, Inc. v. Okla. Employment Security Commission (In re Hollytex Carpet Mills, Inc.)*, 73 F.3d 1516, 1523 (10th Cir. 1996) (emphasis added) (quote from opinion written by U.S. District Court for the Western District of Oklahoma, which the Tenth Circuit adopted in full as its own).

otherwise, instead of holding a claim against the debtor,[5] a former creditor holds whatever plan "currency" it has been given under the plan. Therefore, if claims are satisfied under a plan, which they are in this case through beneficial interests in the Liquidating Trust, there is nothing left to transfer that would be implicated by Bankruptcy Rule 3001(e).[6]

Moreover, as noted at the hearing, making expressly clear that claims cannot be transferred post-confirmation will benefit the Debtors' creditors who will, post-confirmation, become trust beneficiaries. In this case, the plan "currency" to be distributed to creditors in Class 3, in full satisfaction of their claims, is beneficial interests in and rights to the Liquidating Trust.[7] Importantly, to maintain the tax benefits of the Liquidating Trust, beneficial interests should not be transferrable.[8] The parties' intent is for the Liquidating Trust to qualify as a grantor liquidating trust under section 301.7701-4(d) of Treasury Regulations to the Internal Revenue Code,[9] and to treat the trust beneficiaries as grantor-owners of the trust under sections 671 through 678 of the Internal Revenue Code, which means that, for federal income tax

---

[5] Section 1141(c) of the Bankruptcy Code states that "[e]xcept as provided in [1141(d)(2) and (3)] and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is *free and clear of all claims and interests of creditors*, equity security holders, and of general partners in the debtor." 11 U.S.C. § 1141(c) (emphasis added).

[6] One might argue that, if claims do not exist after confirmation, section 6.7 of the Plan is not necessary because claims simply cannot, as a matter of law, be transferred. However, in this instance making that concept clear in the Plan is prudent so that parties have clear notice that purported transfers will not be recognized, and to ensure that the Liquidating Trust does not run afoul of federal tax and securities laws, as discussed below.

[7] Technically, for purposes of federal tax law, because the Liquidating Trust is intended to be a grantor trust, the transfer on the Effective Date of the Liquidating Trust Assets to the Liquidating Trust will be treated as a deemed transfer of those assets to creditors followed by a deemed transfer by the creditors to the trust. *See* Rev. Proc. 94-45 § 3.02 (discussing liquidating trusts created under chapter 11 bankruptcy plans, and stating that "[a] transfer to a liquidating trust for the benefit of creditors must be treated for all purposes of the [Internal Revenue] Code as a transfer to creditors" and that [t]he transfer will be treated as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the trust"). Thus, on the Effective Date, creditors who become beneficiaries of the Liquidating Trust are technically exchanging their claims for the Liquidating Trust Assets.

[8] Indeed, Article V of the Liquidating Trust Agreement states that "[a]ll interests of the Beneficiaries of this Liquidating Trust shall be uncertificated and non-transferable, except by will, intestate succession or operation of law."

3

purposes, the Liquidating Trust is considered a pass through entity and generally will not have taxable income. Failing to restrict the ability to transfer beneficial interests could jeopardize this advantageous tax status.

In addition, restricting transfers of beneficial interests also avoids a designation of the Liquidating Trust as an issuer of equity securities.[10] An issuer of "equity securities" within the meaning of Section 12(g) of the Securities Exchange Act of 1934 (the "Exchange Act") will be subject to reporting and other requirements under certain circumstances set forth in the Exchange Act. Importantly, whether the beneficial interests in a liquidating trust are transferable is one of the factors that the Securities Exchange Commission will consider in determining whether a liquidating trust is an issuer of equity securities under the Exchange Act. For the Court's reference, attached as Exhibit A to this memorandum is a no-action letter issued by the Office of the Chief Counsel of the SEC's Division of Corporate Finance finding that a liquidating trust was not an issuer of equity securities under the Exchange Act. In the no-action letter, the Office of the Chief Counsel notes certain characteristics of liquidating trusts, including that the beneficial interests in the liquidating trust are non-transferrable and non-assignable except by will, intestate succession, or operation of law. The Office of the Chief Counsel also notes that "neither the Trustee, the Liquidating Trust, the Company nor any of their affiliates will take any actions to facilitate or encourage any trading in the beneficial interests in the Liquidating Trust or any instrument or interest tied to the value of the beneficial interests in the Liquidating Trust."[11]

---

[9]    *See* 26 C.F.R. 301.7701-4(d).

[10]   *See In re Armstrong World Industries, Inc.*, 348 B.R. 136, 169 (Bankr. D. Del. 2006) (relying on sections 105(a) and 1123(a)(5) of the Bankruptcy Code to confirm plan with claims trading injunction because "[t]he Claims Trading Injunction is needed so that the beneficial interests in the Asbestos PI Trust are not considered 'securities' under the federal securities laws").

[11]   *See* Exhibit A.

Finally, Bankruptcy Rule 3021, while not directly on point, suggests that the Court has authority to set a record date and restrict claims transfers. That rule states that after a plan is confirmed distributions should be made to creditors whose claims have been allowed. Importantly, it states that "[f]or purposes of this rule, creditors include holders of bonds, debentures, notes, and other debt securities, and interest holders include holders of stock and other equity securities, of record at the time of commencement of distributions unless a different time is fixed by the plan or the order confirming the plan." Thus, the Bankruptcy Rules specifically contemplate the ability of the Court to set a record date for trading debt and equity securities. If the Court has the ability to do so with respect to such securities, it should also have the ability to do so with respect to claims.

Therefore, because the Court is not prohibited by Bankruptcy Rule 3001(e) from confirming the Plan that includes section 6.7, because section 6.7 is designed to maintain certain tax and securities law attributes and exemptions for the benefit of all creditors, and because no parties have objected to the inclusion of section 6.7, the Plan Proponents respectfully request that the Court enter the order confirming the Plan, including section 6.7 thereof.

[Remainder of page intentionally blank]

Dated: November 8, 2013

| | |
|---|---|
| FREDRIKSON & BYRON, P.A. | FAEGRE BAKER DANIELS LLP |
| /e/ Douglas W. Kassebaum | /e/ Michael B. Fisco |
| Clinton E. Cutler (#158094) | Michael B. Fisco (#0175341) |
| Douglas W. Kassebaum (#386802) | Eric J. Howe (#0395086) |
| 200 South Sixth Street, Suite 4000 | Nicole M. Murphy (#0391318) |
| Minneapolis, MN 55402 | 2200 Wells Fargo Center |
| Phone: (612) 492-7000 | 90 South Seventh Street |
| Fax (612) 492-7077 | Minneapolis, MN 55402-3901 |
| ccutler@fredlaw.com | Phone (612) 766-7000 |
| dkassebaum@fredlaw.com | Fax (612) 766-1600 |
| | michael.fisco@FaegreBD.com |
| CO-COUNSEL TO DEBTORS | eric.howe@FaegreBD.com |
| AND DEBTORS IN POSSESSION | nicole.murphy@FaegreBD.com |
| | |
| – and – | COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

McDONALD HOPKINS LLC
Sean D. Malloy (OH 0073157)
Michael J. Kaczka (OH 0076548)
Manju Gupta (OH 0076452)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
smalloy@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com
mgupta@mcdonaldhopkins.com

COUNSEL TO DEBTORS AND DEBTORS
IN POSSESSION

# Exhibit A

FSP Phoenix Tower Corp. Liquidating Trust: No Action, Interpretive and/or Exemptive L... Page 1 of 2

Case 13-41898    Doc 335    Filed 11/08/13    Entered 11/08/13 16:17:44    Desc Main
Document    Page 8 of 10



Home | Previous Page

**U.S. Securities and Exchange Commission**

**Securities Exchange Act of 1934
Sections 12(g) and 13(a)**

**April 1, 2013**

**Response of the Office of Chief Counsel
Division of Corporation Finance**

Re:   FSP Phoenix Tower Corp. Liquidating Trust
      Incoming letter dated March 29, 2013

Based on the facts presented, the Division will not recommend enforcement action to the Commission if the Liquidating Trust, in reliance on your opinion of counsel that the Liquidating Trust is not an issuer of "equity securities" within the meaning of Section 12(g) of the Exchange Act, operates as described in your letter without compliance with the registration and reporting requirements of the Exchange Act. Capitalized terms used in this response have the same meaning as defined in your letter.

In arriving at this position, we note that:

- the Company's shareholders approved the sale of the Company's assets and a dissolution and liquidation of the Company;

- prior to its dissolution, the Company was current in its reporting obligations under the Exchange Act;

- the Company filed a Certificate of Cancellation with the State of Delaware that became effective on December 21, 2012;

- the beneficial interests in the Liquidating Trust are not transferable or assignable except by will, intestate succession, or operation of law;

- the beneficial interests in the Liquidating Trust are not and will not be represented by certificates;

- the purpose of the Liquidating Trust is to liquidate and distribute the assets transferred to it;

- the Liquidating Trust will terminate upon the earlier of the distribution of all of its assets in accordance with the terms of the Liquidating Trust Agreement or December 10, 2017;

- neither the Trustee, the Liquidating Trust, the Company nor any of their affiliates will take any actions to facilitate or encourage any trading in the beneficial interests in the Liquidating Trust or any instrument or interest tied to the value of the beneficial interests in

FSP Phoenix Tower Corp. Liquidating Trust: No Action, Interpretive and/or Exemptive L...    Page 2 of 2

Case 13-41898    Doc 335    Filed 11/08/13    Entered 11/08/13 16:17:44    Desc Main
Document    Page 9 of 10

the Liquidating Trust;

- the Trustee will file annual reports containing unaudited financial statements and certain other information on Form 10-K and will file current reports on Form 8-K; and

- the Form 10-K will include as an exhibit a certification in the form set forth in your letter.

This position is based on the representations made to the Division in your letter. Any different facts or conditions might require the Division to reach a different conclusion. Further, this response expresses the Division's position on enforcement action only. It does not express any legal conclusion on the question presented.

Sincerely,

Carolyn Sherman
Special Counsel

**Incoming Letter:**

The Incoming Letter is in Acrobat format.

*http://www.sec.gov/divisions/corpfin/cf-noaction/2013/fsp-phoenix-tower-corp-040113-12g.htm*

Home | Previous Page                                       Modified: 04/01/2013

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Antioch Company, LLC, et al.,         Chapter 11 Case No. 13-41898
                                          (Jointly Administered)
                Debtors.[1]

**CERTIFICATE OF SERVICE**

       Michael B. Fisco, under penalty of perjury, states that on November 8, 2013, he caused to be served the following:

       Supplemental Memorandum in Support of Confirmation of the Amended Joint Plan of Reorganization of The Antioch Company, LLC and its Affiliated Debtors and the Official Committee of Unsecured Creditors

by sending a true and correct copy via U.S. Mail to the parties named below:

| U.S. Trustee | Sean D. Malloy | Clinton Cutler |
| --- | --- | --- |
| 1015 U.S. Courthouse | McDonald Hopkins LLC | Fredrikson & Byron, P.A. |
| 300 So. Fourth St. | 600 Superior Ave. East, #2100 | 200 So. Sixth St., #4000 |
| Minneapolis, MN 55415 | Cleveland, OH 44114 | Minneapolis, MN 55402 |

and electronically by Notice of Electronic Filing upon all parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

November 8, 2013                                    /e/ Michael B. Fisco
                                                        Michael B. Fisco

---

[1] Jointly administered estates of the following Debtors: The Antioch Company, LLC Case No. BKY 13-41898, Antioch International, LLC Case No. BKY 13-13-41899, Antioch International–Canada, LLC Case No. BKY 13-41900 Antioch International–New Zealand, LLC Case No. BKY 13-41901, Creative Memories Puerto Rico, LLC Case No. BKY 13-41902, Antioch Framers Supply, LLC Case No. BKY 13-41903, and zeBlooms, LLC Case No. BKY 13-41904.